UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAROLYN SCHEUNEMAN,

        Plaintiff,                CIVIL ACTION NO. 11-10593

        v.                       DISTRICT JUDGE AVERN COHN

COMMISSIONER OF            MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

## I.    PROCEDURAL HISTORY

### A.    *Proceedings in this Court*

On February 24, 2011, Plaintiff filed the instant suit seeking judicial review of the

Commissioner's decision disallowing benefits (Dkt. No. 1). Pursuant to 28 U.S.C. §

636(b)(1)(B) and Local Rule 72.1(b)(3), this matter was referred to the undersigned for the

purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of

Disability Insurance and Supplemental Security Income benefits (Dkt. No. 2). This matter is

currently before the Court on cross-motions for summary judgment (Dkt. Nos. 10, 11).

### B.    *Administrative Proceedings*

Plaintiff filed the instant claims on August 11, 2006, alleging that she became unable to

work on January 31, 2004 (Tr. 15, 112-119). The claim was initially disapproved by the

Commissioner on February 15, 2007 (Tr. 15, 67-75 ). Plaintiff requested a hearing and on July

22, 2009, Plaintiff appeared with counsel before Administrative Law Judge (ALJ) Elliott Bunce,

who considered the case *de novo*.  In a decision dated September 16, 2009, the ALJ found that Plaintiff was not disabled (Tr. 12-25).  Plaintiff requested a review of this decision on November 16, 2009 (Tr. 9-11).  The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits[1] (AC-10E, Tr. 196-204), the Appeals Council, on December 16, 2010, denied Plaintiff's request for review (Tr. 1-5).

In light of the entire record in this case, I find that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled.  Accordingly, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.     STATEMENT OF FACTS

### A.     *ALJ Findings*

Plaintiff was 40 years old on her alleged disability onset date (Tr. 23).  Plaintiff's past work history included working at a car wash and two fast food franchises (Tr. 23, 168).  The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since January 31, 2004 (Tr. 17).  At step two, the ALJ found that Plaintiff had the following "severe" impairments: depression, substance-abuse disorder, shoulder separation and obesity.  *Id*.  At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations (Tr.

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ.  In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

17-20).  Between steps three and four, the ALJ found that Plaintiff had the Residual Functional

Capacity (RFC) to perform "work that does not require: exertion above the light level...or

overhead work; or constant reaching; or more than simple, routine repetitious tasks, with one- or

two-step instructions; or more than occasional contact with the coworkers, supervisors, or the

public" (Tr. 20).  At step four, the ALJ found that Plaintiff could not perform any of her past

relevant work (Tr. 23).  At step five, the ALJ denied Plaintiff benefits, because the ALJ found

that Plaintiff could perform a significant number of jobs available in the national economy, such

as visual inspector (120,000 jobs in the national economy), security guard (85,000 jobs in the

national economy) or assembler (100,000 jobs in the national economy) (Tr. 24).

### B.    *Administrative Record*

### 1.    Plaintiff's Testimony and Statements

Plaintiff testified that she completed high school and attended college for about a year

(Tr. 43, 206).  At the time of her hearing, Plaintiff had recently been prescribed an increased dose

(40 mg) of a generic brand of Prozac for depression, but was not currently receiving treatment for

depression (Tr. 47).  Plaintiff described shoulder problems that began on May 26, 2006, when

she had a bicycle accident (Tr. 48-49).  She reported taking Motrin for pain, but no prescription

pain medication (Tr. 47).  Plaintiff admitted to being an alcoholic (Tr. 51).  She also testified that

she lost her last job, in 2004, because her depression caused her to be tardy (Tr. 52-53).  Plaintiff

indicated on a function report that she could pay her bills and manage her bank accounts (Tr.

159), and follow written and spoken instructions (Tr. 161).

### 2.    Medical Evidence

Plaintiff alleges disability due to both mental and physical impairments, the medical

evidence concerning each category of impairment is as follows:

### *i) Evidence of Plaintiff's Mental Impairments*

In early 2006, Plaintiff started mental health counseling at Catholic Charities.  On March 29, 2006, Plaintiff's therapist forced her to continue therapy due to substance abuse problems and mood problems (Tr. 369, 371).  Throughout her treatment at Catholic Charities in 2006, Plaintiff reported working for her father (Tr. 321, 354, 369, 370, 372, 374), and expressed frustration because he constantly checked on her progress and sometimes did not pay her (Tr. 321, 354).  Plaintiff also reported seeking and applying for other employment (Tr. 349-50, 375).  In September 2006, Plaintiff reported serving as care giver to her elderly roommate, who had multiple sclerosis (Tr. 347).

On November 16, 2006, Marianne Goergen, Psy.D., evaluated Plaintiff at the request of the state agency.  During this evaluation, Plaintiff's chief complaints were depression and a substance abuse disorder (Tr. 206).  Plaintiff reported attending treatment at Catholic Charities twice weekly on a consistent basis since 2003 due to her court-ordered attendance (Tr. 206).  She also admitted being arrested three times for driving under the influence and several times for possession of marijuana (Tr. 206).  Plaintiff lived with a friend and reported doing her laundry, making her own food, and going to the grocery store (Tr. 207).  A mental status examination revealed that Plaintiff had normal motor activity, intact memory, and good attention and concentration (Tr. 207-08, 255).  Dr. Goergen diagnosed alcohol abuse and cannabis abuse, both early full remission, and recurrent, mild depression, and assessed a Global Assessment of Functioning (GAF) scale score of 55, which corresponds to moderate symptoms (Tr. 208).[2]

---

[2]   The GAF score is "a subjective determination that represents the clinician's judgment of the individual's overall level of functioning. It ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). A GAF score of 31-40 indicates some impairment in reality testing or communication (*e.g.*, speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood. A GAF of 41 to 50 means that the patient has serious symptoms . . . OR any serious

On December 6, 2006, Catholic Charities psychiatrist E. Johnson, D.O., assessed a GAF score of 65, which indicates mild symptoms (Tr. 337). Plaintiff indicated her desire to return to school (Tr. 337). On January 9, 2007, Dr. Johnson conducted a medication review and assessed a GAF score of 64, which also indicates mild symptoms (Tr. 325).

State agency expert Sheila Williams-White, M.D., reviewed Plaintiff's file in February 2007 in light of the requirements of Listing 12.04 Affective Disorders and 12.09 Substance Addiction Disorders (Tr. 239). Dr. White opined that Plaintiff's mild depression and alcohol and cannabis abuse, early full remission, did not satisfy the criteria of their respective listings because Plaintiff experienced only a moderate restriction of activities of daily living, mild difficulties in maintaining both social functioning and concentration, persistence, or pace, and no episodes of decompensation (Tr. 249). Dr. White also concluded that there was no evidence that Plaintiff could not function outside a highly supportive living arrangement (Tr. 250). Dr. White found that Plaintiff was not significantly limited in her ability to understand, remember, and carry out very short and simple instructions; perform activities within a schedule, maintain regular attendance, and be punctual; sustain an ordinary routine without special supervision; make simple work-related decisions; and complete a normal work day or work week without interruptions from psychologically-based symptoms (Tr. 253-54), but may be more limited in meeting more complex and detailed demands (Tr. 255).

On December 11, 2007, pursuant to a court-ordered referral from the probation department, Plaintiff presented to Catholic Charities for substance abuse treatment after testing

---

impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job). A GAF rating of 51 to 60 signals the existence of moderate difficulty in social or occupational functioning." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009). "A GAF score may help an ALJ assess mental RFC, but it is not raw medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning." *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x. 496, 502 fn. 7 (6th Cir. 2006).

positive for cocaine use (Tr. 285). During her intake assessment, a Catholic Charities provider assessed a GAF score of 58, which corresponds to moderate symptoms (Tr. 292). Plaintiff was enrolled in Baker College at the time (Tr. 286), and reported being a good student (Tr. 290). On March 18, 2008, Plaintiff's Catholic Charities therapist reported that Plaintiff's mood was stable (Tr. 294). Plaintiff reported completing the past semester with "A's" (Tr. 294). On December 29, 2008, Plaintiff told a Genesys provider Lan Tang, M.D., that she recently decided to attend Baker College to try to earn a degree (Tr. 387). On that same date, Dr. Tang prescribed Prozac 20 mg to treat Plaintiff's depression (Tr. 386). In January 2009, Plaintiff again told Dr. Tang that she was trying very hard to return to school to obtain a certificate to find a new job (Tr. 385).

### ii) Evidence of Plaintiff's Physical Impairments

On May 26, 2006, Plaintiff had a bicycle accident after drinking alcohol and sustained an AC separation and partial tear of her rotator cuff (Tr. 271). On June 19, 2006, Plaintiff told her doctors at Genesys Regional Medical Center that her pain had resolved (Tr. 268, 400). A right shoulder x-ray revealed marked AC separation (Tr. 269) and a right shoulder area deformity, but a physical examination revealed full range of motion in Plaintiff's right shoulder without tenderness (Tr. 268). Plaintiff was instructed to wear a sling for three months, but she wore it for just two months (Tr. 271). One month later, on June 28, 2006, Plaintiff returned to Genesys and stated that she did not have a lot of right shoulder tenderness, had full range of right shoulder motion, had no limitations, had been bike riding, and doing her normal activities as usual (Tr. 272). Plaintiff was not taking any non-steroid anti-inflammatory drugs, and scapular stabilization exercises were recommended (Tr. 272).

On October 6, 2006, Plaintiff returned to Genesys complaining of left shoulder pain (Tr. 271). Dr. Deborah Cornell's examination revealed possible right shoulder atrophy, no left

shoulder muscle atrophy, and full muscle strength in both upper extremities (Tr. 271).  Dr.

Cornell diagnosed right shoulder AC separation and left posterior thorax myofascial pain,

referred Plaintiff to an orthopedic surgeon, and prescribed Motrin 600 mg for anti-inflammatory

purposes (Tr. 271).

An October 23, 2006, MRI studies revealed possible tendinitis/bursitis in Plaintiff's left

shoulder (Tr. 274), grossly abnormal appearance of Plaintiff's AC joint in the right shoulder and

findings consistent with a partial tear of the infraspinatus tendon (Tr. 273).  Plaintiff complained

of bilateral shoulder pain on December 4, 2006 (Tr. 270).

On December 5, 2006, Sayyid H. Samiullah, M.D., an internist, examined Plaintiff at the

request of the state agency.  Plaintiff reported that she lived with an old lady and worked for her

at home (Tr. 214).  Examination revealed that Plaintiff had no neurological deficits, full range of

spinal motion, normal findings in her extremities, normal dexterity, and normal ambulation (Tr.

215).  Plaintiff also exhibited normal joint movement except for tenderness and separation of the

AC joint on the right with slightly diminished movements (Tr. 215).  Range of motion testing

revealed reduced right shoulder abduction, adduction, internal and external rotation, and forward

elevation (Tr. 217).

Internist James E. Ware, D.O., examined Plaintiff two days later on December 7, 2006.

Plaintiff's current medication consisted of Motrin 600 mg (Tr. 221).  Plaintiff complained of

minimal pain from her right shoulder AC separation (Tr. 222).  Examination revealed no pain

with palpation about the AC, intact rotator cuff function, minimal pain with full range of

shoulder motion, intact neurovascular findings, SICK scapular syndrome present with significant

interior rotation of the scapula and shoulder drooping, and weaker rotator cuff function on the

right (Tr. 222).  An MRI study showed a partial tear of the infraspinatus of the shoulder (Tr.

222).  Dr. Ware noted that Plaintiff "really has no pain at the AC joint today" (Tr. 222).  Plaintiff

confirmed having minimal discomfort and having had no physical therapy in regards to her right

shoulder since her accident seven months earlier (Tr. 223).

Dr. Ware diagnosed right shoulder dysfunction secondary to SICK scapula syndrome and

grade 3 AC shoulder separation (Tr. 223).  The physician noted that Plaintiff was not a surgical

candidate, her pain was very minimal, and "functionally she is able to use the arm quite well"

(Tr. 223).  Dr. Ware recommended physical therapy to rehabilitate the right shoulder, particularly

to work on scapular stabilization and strengthening, and rotator cuff strengthening (Tr. 223).

One month later, state agency expert Jack Kaufman, M.D., reviewed Plaintiff's file and opined

that she could perform light exertional work (Tr. 230), and was limited in reaching in all

directions (Tr. 232).

### 3.    Vocational Expert

At the administrative hearing, a vocational expert (VE) testified that Plaintiff's past jobs

of fast food worker and car wash attendant were unskilled, light jobs, while her past gas station

attendant job was unskilled, medium work (Tr. 59).  The ALJ asked the VE to consider an

individual who possessed Plaintiff's vocational factors and could perform light exertional work

that required no overhead work or constant reaching with either arm; no more than simple,

routine repetitive tasks with one or two step instructions; and no more than occasional contact

with coworkers, supervisors, and the public (Tr. 59-60).  In response, the VE testified that such

an individual could perform unskilled, light work, including the representative examples of

visual inspector, security guard, and assembler (Tr. 60).  The VE testified that these positions did

not require contact with the public (Tr. 60).  The VE testified that there was no conflict between

his testimony and the Dictionary of Occupational Titles (DOT) (Tr. 61).

In response to questioning from Plaintiff's attorney, the VE testified that he could not determine whether an individual's felony criminal record would eliminate these jobs, adding that "it's really up to the employer" (Tr. 61).  The VE also testified that the jobs would not be eliminated if the individual could not concentrate for 25% of the day because the simple, unskilled jobs did not require the worker to be on task 100% of the workday (Tr. 62).

### C.   Plaintiff's Claims of Error

Plaintiff raises several arguments on appeal, in scattershot fashion.  First, Plaintiff argues that the ALJ failed to adequately assess Plaintiff's mental condition.  Specifically, Plaintiff avers that the ALJ failed to recognize Plaintiff's attention deficit hyperactivity disorder (ADHD) and failed to adequately account for Plaintiff's alleged deficiency in concentration, persistence and pace.  Plaintiff also argues that the ALJ did not did not adequately account for Plaintiff's need to take unexcused work absences, due to her depression.  Second, Plaintiff argues that the ALJ failed to adequately account for her shoulder injury.  Specifically, Plaintiff avers that the hypothetical question relied upon by the ALJ wrongly assumed that Plaintiff could extend her arms away from her body.  Finally, Plaintiff attacks the testimony of the VE, arguing that the VE wrongly assumed that Plaintiff could perform jobs in the national economy, as opposed to only in Plaintiff's local region.  Plaintiff also avers that the VE did not adequately address the impact of Plaintiff's prior felony convictions on her ability to find and maintain competitive employment.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *See Sullivan v. Zebley*,

493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency

makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and

finally to the Appeals Council.  *See Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found

during this administrative review process, the claimant may file an action in federal district court.

*Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

    This Court has original jurisdiction to review the Commissioner's final administrative

decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the

court "must affirm the Commissioner's conclusions absent a determination that the

Commissioner has failed to apply the correct legal standard or has made findings of fact

unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d

591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In

deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de

novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499

F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of

course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including

that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v.

Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may...consider the credibility of a claimant when making a

determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007)

(the "ALJ's credibility determinations about the claimant are to be given great weight,

particularly since the ALJ is charged with observing the claimant's demeanor and credibility.")

(quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree

is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony,

and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *See Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of*

*Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence

without directly addressing in his written decision every piece of evidence submitted by a party.")

(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx.

521, 526 (6th Cir. 2006).

### B.    Governing Law

The "[c]laimant bears the burden of proving her entitlement to benefits."  *Boyes v. Sec'y*

*of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc.*

*Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).  There are several benefits programs under the Act,

including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.)

and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq*.).

Title II benefits are available to qualifying wage earners who become disabled prior to the

expiration of their insured status; Title XVI benefits are available to poverty stricken adults and

children who become disabled.  F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984).

While the two programs have different eligibility requirements, "DIB and SSI are available only

for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by reason of
> any medically determinable physical or mental impairment which
> can be expected to result in death or which has lasted or can be
> expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the

application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial
> gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

-13-

### C.    Analysis and Conclusions

As noted earlier, Plaintiff raises three overarching arguments on appeal: (1) that the ALJ did not adequately assess Plaintiff's mental condition; (2) that the ALJ did not adequately account for Plaintiff's shoulder injury; and (3) that the VE's testimony was flawed.  Each argument is discussed below:

### 1.    Plaintiff's Mental Condition

Plaintiff's first argument is that the ALJ failed to adequately account for her mental limitations.  Defendant responds that the ALJ properly accounted for Plaintiff's mental limitations by prescribing simple, routine, repetitive tasks with one- or two-step instructions, and no more than occasional contact with the coworkers, public, or supervisors (Tr. 20).  Defendant is correct.  No legitimate evidence demonstrates that Plaintiff could not perform tasks within these parameters during the relevant period.  The ALJ stressed that Plaintiff failed to meet her burden to provide objective medical evidence to support her alleged mental limitations (Tr. 23).  Plaintiff contends that the ALJ did not account for attention deficit hyperactivity disorder (ADHD) and concentration problems, however, the Catholic Charities' treatment notes do not reflect a diagnosis of ADHD or significant concentration problems.  Instead, as the ALJ noted (Tr. 22), those records show Plaintiff experienced social, financial, and family stressors, but Plaintiff's mental health providers consistently assessed GAF scores in the 50's and 60's, which correspond to moderate or mild limitations in social, occupational, and school functioning (Tr. 292, 325, 337).  The ALJ also found it compelling that – despite Plaintiff's claims of disabling mental limitations as of January 31, 2004 – Plaintiff did not receive mental health treatment until at least two years later, under court order (Tr. 22, 206).

It is also noteworthy that Plaintiff repeatedly told her Catholic Charities therapist that she was working for her father and applying for other jobs (Tr. 321, 349-50, 354, 370, 372, 374-75). Moreover, Plaintiff reported serving as care giver for her elderly roommate/landlady who had multiple sclerosis (Tr. 347). Such activities are significant because any work performed by a claimant during the period that she claims to be disabled, even if not performed on a full-time basis, can show that the claimant is capable of performing substantial gainful activity. *See* 20 C.F.R. §§ 404.1571, 416.971. In sum, the ALJ recognized that Plaintiff's severe depression and substance abuse disorder created significant limitations, but he explained that the evidence, including Plaintiff's reports of working and attending college during the relevant period, failed to support a finding that Plaintiff was disabled from all work (Tr. 22).

The ALJ also relied, in part, on the opinion of Dr. Goergen, the state agency psychologist who evaluated Plaintiff in November 2006 and found that Plaintiff had normal motor activity, intact memory, and good attention and concentration (Tr. 207-08), and assessed a GAF score of 55 (Tr. 208). Another state agency psychological expert, Dr. White, reviewed Plaintiff's file three months later and similarly concluded that Plaintiff experienced only "mild" difficulties in maintaining both social functioning and concentration, persistence, or pace (Tr. 249). The ALJ was entitled to rely upon, the opinion evidence from these psychologists because state agency medical and psychological consultants and program physicians and psychologists are experts in Social Security disability evaluation. *See* 20 C.F.R. §§ 404.1527(f)(2)(i); 416.927(f)(2)(i) (providing that state agency examiners are highly qualified and are experts in Social Security disability evaluations).

Plaintiff also avers that the ALJ failed to assess Plaintiff's mental limitations in accordance with the guidance of Social Security Ruling (SSR) 85-15: Titles II and XVI:

-15-

Capability to Do Other Work - The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments. Plaintiff's reliance on that ruling is, however, misplaced. The Sixth Circuit has recognized that, as indicated in the title of SSR 85-15, this ruling is relevant where a claimant has **solely** nonexertional limitations. *See Jordon v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) ("SSR 85-15 focuses on claimants with mental impairments and explicitly states that it applies to claimants with solely nonexertional impairments."). Because Plaintiff has exertional limitations, SSR 85-15 in applicable in this matter.

In sum, substantial evidence supports the ALJ's findings concerning Plaintiff's mental condition; Plaintiff's argument to the contrary is not well-taken.

### 2.    Plaintiff's Shoulder Injury

Plaintiff's second argument is that the ALJ failed to adequately assess her shoulder impairment (Pl.'s. Br. at 10-11). Plaintiff also avers that the ALJ considered only a portion of the report from Dr. Ware concerning her shoulder injury (Pl.'s. Br. at 10). Defendant responds that the ALJ accurately accounted for Plaintiff's shoulder impairment and expressly considered Dr. Ware's report from his December 7, 2006 examination of Plaintiff (Tr. 21-22). Defendant is correct. Contrary to Plaintiff's contention, neither the ALJ nor the physician minimized Plaintiff's shoulder injury. Instead, the ALJ discussed Dr. Ware's report in his analysis of all the other evidence concerning Plaintiff's shoulders. First, the ALJ discussed evidence from Genesys Health Care from June 2006, showing Plaintiff had no neurological deficits or weakness following her bicycle accident, complete range of shoulder motion and the ability to perform her normal activities (Tr. 21). The ALJ next noted Plaintiff's report of shoulder pain and discomfort

in October 2006, and then cited Dr. Ware's report of December 7, 2006, that Plaintiff had very minimal pain, and could functionally use her arm quite well (Tr. 21).

Next, the ALJ stressed that the objective medical evidence following Dr. Ware's examination failed to demonstrate that Plaintiff required or received treatment for her shoulder separation (Tr. 21). In fact, Plaintiff received care at Genesys Family Health Care for other issues throughout the relevant period (Tr. 381-404), but there is no evidence that she received significant follow-up treatment for her shoulder after December 2006. Furthermore, the ALJ correctly pointed to the report of Dr. Samiullah, the other consultative examiner who examined Plaintiff just two days before Dr. Ware (Tr. 21). Dr. Samiullah's examination revealed that Plaintiff had no neurological deficits, full range of spinal motion, normal findings in her extremities, normal dexterity, normal ambulation, and normal joint movement except for tenderness and separation of the AC joint on the right with only slightly diminished movements (Tr. 215).

Plaintiff has simply failed to identify evidence showing that her shoulder caused greater functional limitation than recognized by the ALJ. *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (quoting *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001)). "If the Commissioner's decision is supported by substantial evidence, we must defer to that decision, 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Id.* (quoting *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005)). Substantial evidence supports the ALJ's findings concerning Plaintiff's shoulder impairment, and Plaintiff's argument to the contrary is not well-taken.

### 3.     Vocational Expert

Finally, Plaintiff argues that the testimony of the VE was flawed.  At step five, the ALJ relied on VE testimony to determine that Plaintiff could perform a significant number of other jobs despite her established limitations and, therefore, she was not disabled during the relevant period (Tr. 23).  The ALJ was entitled to rely on such testimony.  *See Varley v. Sec'y of Health and Human Servs*., 820 F.2d 777, 779 (6th Cir. 1987) (holding that VE testimony constitutes substantial evidence in support of the ALJ's finding regarding the jobs a claimant can perform with her limitations).  As the Sixth Circuit has explained, "[i]t is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact."  *Casey v. Sec'y of Health & Human Servs*., 987 F.2d 1230, 1235 (6th Cir. 1993), citing *Hardaway v. Sec'y of Health & Human Servs*., 823 F.2d 922, 927-28 (6th Cir. 1987).

The ALJ asked the VE to consider Plaintiff's established limitations, as set forth in his RFC finding (Tr. 60).  The ALJ specifically asked the VE to consider an individual who possessed Plaintiff's vocational factors and could perform light exertional work that required no overhead work or constant reaching with either arm; no more than simple, routine repetitive tasks with one or two step instructions; and no more than occasional contact with coworkers, supervisors, and the public (Tr. 59-60).  In response, the VE testified that such an individual could perform unskilled, light work, including the representative examples of visual inspector, security guard, and assembler (Tr. 60).  The VE testified that these positions did not require contact with the public (Tr. 60).  The VE also testified that there was no conflict between his testimony and the DOT (Tr. 61).

Plaintiff argues that the VE's determination that a significant numbers of suitable jobs is flawed because the VE did not provide the number of available jobs in Plaintiff's local geographic area (Pl's Br. at 11).  This argument is without merit.  The Sixth Circuit has held that the Commissioner is not required to provide evidence that job opportunities exist in a claimant's local economy.  *See Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir. 1999); *see also Roby v. Comm'r of Soc. Sec.*, 48 Fed. App'x 532, 539 n.3 (6th Cir. 2002) ("The Commissioner is not required to show that jobs exist within a local commuting area.").  Plaintiff's argument that the VE should have considered Plaintiff's inability to drive is also without merit (Pl's Br. at 11). The evidence does not show that Plaintiff's impairments prevent her from driving.  Rather, it is likely that Plaintiff is prohibited from driving due to her repeated arrests for driving under the influence.  The Sixth Circuit has explained that a physical inability to drive is a factor for the VE's consideration, but extrinsic factors affecting a claimant's ability to commute should not be considered.  *See Harmon*, 168 F.3d at 292.  The VE likewise was not required to consider the impact of Plaintiff's felony criminal record when determining whether a significant number of suitable jobs for Plaintiff existed in the national economy.  *See* 20 C.F.R. §§ 404.1566, 416.966 (stating that it does not matter whether work exists in the immediate area in which a claimant lives, a specific job vacancy exists, or the claimant would be hired if she applied); *see also Hardaway v. Sec'y of Health & Human Serv's.*, 823 F.2d 922, 928 (6th Cir. 1987) (vocational expert is not required to identify specific places of employment where identified jobs exist).

Finally, there is also no merit to Plaintiff's argument that the ALJ erred in relying on the VE testimony because it conflicted with the DOT (Pl's Br. at 9).  Plaintiff specifically argues that the identified jobs are not suitable because, according to the DOT, they entail a Reasoning Level of at least 2 and, therefore, are not appropriate for individuals limited to simple, routine, one- or

-19-

two-step tasks (Pl's. Br. at 9).  However, the reasoning level requirements of the DOT serve merely as an advisory measure in determining the suitability of a job for a claimant.  *See Matelski v. Comm'r of Soc. Sec.*, No. 97-3366, 1998 WL 381361, at 6 (6th Cir. June 25, 1998) ("[T]he reasoning development requirements [of the DOT], as well as some other development requirements, are 'merely advisory in nature.'") (citations omitted).  Plaintiff, therefore, cannot use the DOT to rebut or impeach the VE's testimony.

In sum, because the ALJ asked the VE to consider all of Plaintiff's limitations that were established by the record, he was entitled to rely on the VE's responsive testimony.  *See Casey*, 987 F.2d at 1235.  Plaintiff's arguments that the VE's testimony was somehow flawed are not well-taken.

## III.    RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, that Defendant's motion for summary judgment be **GRANTED** and that the findings and conclusions of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370,

1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be

served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the

opposing party may file a response.  The response shall be no more than 20 pages in length

unless, by motion and order, the page limit is extended by the court.  The response shall address

each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon
Mark A. Randon
United States Magistrate Judge

Dated:  December 6, 2011

## Certificate of Service

*I hereby certify that a copy of the foregoing document was mailed to the parties of record on December 6, 2011, by electronic and/or ordinary mail.*

*s/Barbara M. Radke*
*Judicial Assistant*